Frank Zarsky v. Commissioner. Grace Zarsky v. Commissioner. Frank Zarsky and Grace Zarsky v. Commissioner.
Zarsky v. Commissioner
Docket Nos. 37082, 37083, 37084.
United States Tax Court
1953 Tax Ct. Memo LEXIS 259; 12 T.C.M. (CCH) 501; T.C.M. (RIA) 53163; May 8, 1953
*259 Howell Ward, Esq., Geo. A. Hamilton, Esq., and Charles E. Pratt, Esq., for the petitioners. E. G. Sievers, Esq., for the respondent. JOHNSON Memorandum Findings of Fact and Opinion JOHNSON, Judge: Respondent determined deficiencies in income tax of the petitioners for the years 1946, 1947 and 1948 as follows: Docket
No.
Petitioner
Year
Deficiency
37082
Frank Zarsky
1946
$17,144.25
1947
19,266.39
37083
Grace Zarsky
1946
17,144.25
1947
19,266.39
37084
Frank Zarsky and Grace
Zarsky
1948
56,800.61
These proceedings were consolidated for hearing. The sole issue for decision is whether the Commissioner erred in increasing the reported income of the petitioners as a result of disregarding the petitioners' son and daughter as partners in Zarsky Lumber Company. At the trial petitioners waived all issues except the one as to whether Wesley Zarsky, petitioners' son, hereinafter called "Wesley," and their daughter, Dorothy Zarsky Breaker, hereinafter called "Dorothy," were admitted as partners in Zarsky Lumber Company on January 1, 1946, and were bona fide partners for the years 1946, 1947 and 1948. Findings of Fact
*260 Some of the facts are stipulated and are so found. Petitioners are husband and wife, residing in Woodsboro, Texas. They filed separate income tax returns for the years 1946 and 1947, and a joint return for 1948, all of which were filed with the collector of internal revenue for the first district of Texas. The property and income of petitioners here involved was their community property. Petitioner in the singular herein refers to Frank Zarsky, the husband. Zarsky Lumber Company, hereinafter called "Zarsky," was engaged in the retail lumber business with its home office in Woodsboro, Texas, and branch yards in eight south Texas towns, and has always been a partnership since its creation in 1927. Petitioner and his brother, C. F. Zarsky, were the original partners. In 1929 their brother-in-law, Henry Smystrla, was admitted as a third partner, each owning a 33 1/3 per cent interest. In 1936, due to expansion of the business, additional capital was required which petitioner had available and the other partners did not. Whereupon petitioner acquired a portion of the interest of the other two partners, and upon such rearrangement petitioner owned a 45 per cent interest in the partnership. *261 C. F. Zarsky's interest was reduced to 30 per cent and the interest of Henry Smystrla to 25 per cent, and this continued to be and was the interest each owned until January 1, 1946. No written agreement was executed when the partnership was first formed, or when Henry Smystrla was admitted thereto, or when the percentage of ownership was changed in 1936; all were based on oral agreements. On January 1, 1946, Wesley and Dorothy became partners in Zarsky, the interest and ownership of each therein being 10 per cent of the whole, which they acquired by purchase from petitioner. By such sales petitioner reduced his interest in Zarsky from 45 per cent to 25 per cent. The interest of the others was unchanged. C. F. Zarsky and Smystrla were previously consulted and the admission of Wesley and Dorothy as partners was agreeable to all. No written articles of partnership were executed and the sale by petitioner to Wesley and Dorothy was oral, except for the promissory notes Wesley and Dorothy executed to petitioner in payment of the interest they acquired. The notes so executed and delivered by Wesley and Dorothy to petitioner in full payment of the interest they purchased were identically *262 alike, each being for the sum of $66,336.76, payable to the order of petitioner at Woodsboro, Texas, with interest at the rate of 1 1/2 per cent per annum. Each note was "payable in annual installments of not less than $5,000 each," the first installment payable on or before January 1, 1947, "and a like installment being due and payable on or before the first day of January of each year thereafter," Dorothy's note was also signed by her husband, John C. Breaker. The total book value of Zarsky on January 1, 1946, was $663,367.68. Each note was for 10 per cent of that amount, which was a fair market value for the interest acquired by Wesley and Dorothy. No collateral or security was given by Wesley or Dorothy to secure payment of the notes. Wesley made payments to petitioner on his note as follows: October 23, 1947
$ 8,000 [1]
Sept. 27, 1948
7,000 [1]
June 17, 1949
10,000
Jan. 9, 1950
5,000
Jan. 17, 1950
8,500 [1]
Jan. 1950
4,500 [1]
March 1, 1950
5,000 [1]
May 3, 1952
5,000
Dorothy *263 and her husband made payments to petitioner on their note as follows: June 17, 1949
$10,000
Jan. 9, 1950
10,000
Mar. 11, 1950
3,000 [1]
May 3, 1952
5,000
On January 1, 1946, and prior to his purchase of the partnership interest, Wesley's net worth was about $20,000, and he owed no debts. The net worth of Dorothy and her husband was about $15,000. Her husband was vice president of a Houston corporation with a yearly salary of $8,000. Zarsky did not file an assumed name certificate on January 1, 1946, as it did in 1929 when Henry Smystrla was admitted as a partner, but all banks with whom the firm did business were advised of Wesley's and Dorothy's admission to the firm. The sale to Wesley and Dorothy was not hastily made; it had ben considered by the parties for more than a year. Discussion was also had with Zarsky's tax consultant. Due to his age and also because of other interests than Zarsky, petitioner wanted to shift some of the managerial responsibility of Zarsky to Wesley. Wesley *264 was anxious to acquire an interest and desired more than 10 per cent, but since Dorothy was petitioner's only other child and also desired an interest, petitioner felt that he should not discriminate against her by selling to Wesley only. Wesley was 31 years of age and practicing law, and after becoming a partner he continued to practice law but did contribute valuable advisory and managerial services to Zarsky. After the sale petitioner devoted less time to Zarsky. Dorothy was 24 years of age and lived in another part of the state. Except for an occasional consultation with Wesley about Zarsky, she contributed no service to the business. The books and records of Zarsky reflected and confirmed the acquisition on January 1, 1946, by Wesley and Dorothy of a 10 per cent interest each in the business and a recognition of their ownership of such interest throughout 1946, 1947 and 1948. Excerpts from various book entries to this effect are contained in the stipulation of facts, which is a part hereof, and hence not reproduced here. The only withdrawals made by Wesley and Dorothy from their personal accounts on the books of Zarsky were for payments on their notes and income taxes. *265 Zarsky filed partnership returns in each of the years 1946, 1947 and 1948 and reported therein the names of partners and their interest as follows: Petitioner, 25 per cent; Henry Smystrla, 25 per cent; C. F. Zarsky, 30 per cent; Wesley, 10 per cent, and Dorothy, 10 per cent. Respondent in his notices of deficiency determined that Wesley and Dorothy in 1946, 1947 and 1948 "were not bona fide members of the partnership" of Zarsky, and added to petitioners' income the distributive shares of Wesley and Dorothy therein. There was a real intention on the part of petitioner, Henry Smystrla, C. F. Zarsky, Wesley and Dorothy, effective January 1, 1946, to form a partnership and to carry on the business of Zarsky as partners, and the partners acted in good faith and with a valid business purpose in so doing, and such partnership was continued by them throughout the years 1946, 1947 and 1948. Opinion The only question in this case is whether Wesley and Dorothy were bona fide partners in Zarsky during the years 1946, 1947 and 1948. The evidence clearly shows that they were and that each owned a 10 per cent interest therein. We deem it unnecessary to repeat or discuss the evidence, all *266 of which is fully set forth in or findings of fact, and which fully sustains our ultimate findings of fact that they were partners in the taxable years. The fact that the partnership agreement was oral is immaterial, since all of the evidence reflects the real intention of the parties to form such partnership, and that a business purpose existed therefor. Also that a valid partnership was in fact formed and it conducted and carried on the business of Zarsky during the years in question. This meets the test prescribed in . Accordingly, respondent's action in adding to petitioner's income the distributive shares of Wesley and Dorothy in Zarsky is reversed. Since other adjustments by respondent are not now contested by petitioners. Decisions will be entered under Rule 50. Footnotes
1. These payments were made from funds derived from outside sources. All others were debited against personal accounts of Wesley and Dorothy on the partnership books.↩
1. These payments were made from funds derived from outside sources. All others were debited against personal accounts of Wesley and Dorothy on the partnership books.↩